## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LARRY CHARLES WELCH,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **2:10-cv-8052-JHH-JHE** |
| | ) | **2:07-cr-0394-JHH-JHE** |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### MEMORANDUM OPINION

The court has before it the November 23, 2010 Motion (Doc. #1) to Vacate, Set Aside, or Correct a Sentence, brought by Larry Charles Welch, pursuant to 28 U.S.C. § 2255. After careful consideration of all the briefs and evidence presented by the parties, the Motion (Doc. #1) is due to be denied for the following reasons.

## I. PROCEDURAL HISTORY

Movant Larry Charles Welch was convicted in this court on December 5, 2007, of the following three counts: one count of possession with intent to distribute fifty grams or more of a mixture and substance of cocaine base and an amount of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(D)(Count 1); one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(Count 2); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §

922(g)(1)(Count 3).  He was sentenced on April 2, 2008, to a total sentence of 420 months, to be followed by a 120-month term of supervised release.

On appeal, Welch argued that the evidence was insufficient to support his convictions, and that his sentence is unreasonable because it is greater than necessary to satisfy the requirements of 18 U.S.C. § 3553(a).  The Eleventh Circuit Court of Appeals affirmed his conviction and sentence on June 1, 2009, *United States v. Welch*, 330 Fed. Appx. 859 (11th Cir. 2009), and denied his application for rehearing *en banc* on July 27, 2009, *United States v. Welch*, 349 Fed. Appx. 534 (11th Cir. 2009)(table).  The United States Supreme Court denied Welch's petition for a writ of certiorari on December 7, 2009, *Welch v. United States*, 558 U.S. 1082 (2009) and denied his petition for rehearing on February 22, 2010, *Welch v. United States*, 559 U.S. 964 (2010).

## II.  CLAIMS PRESENTED

In support of his Motion to Vacate, Welch makes the following

1.  He received ineffective assistance of counsel <u>at trial</u> because counsel:

> a.  failed "to conduct an adequate investigation.  Counsel failed to interview crucial witnesses, properly inspect the crime scene, and file motions to both suppress and exclude damaging evidence";
>
> b.  failed "to oppose the repeated playing of the 911 recording on the basis that it created a bad man inference, and therefore the unfair prejudice outweighed the probative value";
>
> c.  failed "to oppose the introduction of the 911 recording without the testimony of the actual 911 operator as being a

violation of the confrontation and cumpulsory [sic] clauses of the sixth amendment";

d. failed "to oppose the introduction of the gun and drugs into evidence on the basis that there was no established chain of custody";

e. failed "to adequately cross examine the two police officers who first arrived at the scene"; and

f. failed "to oppose the Court's instruction to the Jury that they must continue to deliberate even though they had already exhausted all attempts at unanimity and were at a total impasse";

2. he received ineffective assistance of counsel <u>at sentencing</u> because counsel:

a. made "prejudicial statement within the sentencing memorandum to the effect that the petitioner is guilty of the charged crimes";

b. failed "to oppose the improper stacking/grouping of the sentences that resulted in a sentence that was 10-years greater than otherwise necessary";

3. he received ineffective assistance of counsel <u>on appeal</u> because counsel failed "to raise claim that District Court committed reversible error by failing to assure that the petitioner was afforded his right of allocution";

4. "the totality of the circumstances [and] the cumulative effect of counsel's errors amounts [sic] to constitutionally ineffective assistance of counsel";

5. there is newly discovered evidence that establishes that he is actually innocent of the charges;

6. he is challenging two of his prior state court convictions in state court, and if he succeeds in overturning them, he will be actually innocent of being an armed career criminal in this case; and

3

7.  the consecutive sentence imposed pursuant to 18 U.S.C. § 924(c)(1)(A) is unauthorized because he also faced a greater mandatory minimum sentence under some other provision of law.

(Doc. # 1).

On April 10, 2012, Welch amended his motion to vacate, raising the following claim:

8.  he received ineffective assistance of counsel during the pre-trial phase because counsel failed "to even attempt to negotiate a plea agreement on Welch's behalf" and failed to "properly advise him in regards to his chances of success at trial, and the sentence he likely faced if he lost, as opposed to that he would receive if he entered into a plea agreement with the government or entered a naked plea with the court, in light of the Supreme Court's recent holdings in *Lafler* and *Frye*."

(Doc. # 7).

In response to the court's orders to show cause, the respondent filed answers to both the original motion and the amendment, in which it maintains that the motion to vacate is due to be denied.[1]  (Docs. # 4, 10.)  By orders of the court, the parties were advised that the respondent's answers would be treated as a motion for summary dismissal.  The movant was advised that in responding to the motions for summary dismissal, he must supply the court with counter affidavits and/or documents to set forth specific facts showing that there are genuine issues of material fact to be decided.  In response, the movant has filed traverses and affidavits.  (Docs. # 6, 12, and 12-1.)

## III. ANALYSIS

---

[1]  The respondent has also filed the affidavit of Welch's attorney, Glennon F. Threatt. (Doc. 4-1).

The court begins its analysis by discussing Welch's claims of ineffective assistance of counsel at trial, sentencing, and on appeal.  The court then discusses Welch's claim of actual innocence.  Third, the court considers Welch's claim regarding his prior state court convictions.  Fourth, the court discusses Welch's claim that the sentence imposed under 18 U.S.C. § 924(c)(1)(A) was unauthorized. Finally, the court addresses Welch's amendment to his Motion to Vacate, that counsel was ineffective in the pre-trial stage.

## A.  Ineffective Assistance of Counsel (Claims 1-4)

The United States Supreme Court established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim." *Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(quoting *Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)). In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *Strickland,* 466 U.S. at 691-92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland,* 466 U.S. at 694. Furthermore, in addition to showing that the outcome would have been different, a

petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(citing *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)). "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(quoting *Fretwell*, 113 S. Ct. at 842). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

### 1.  Failure to Conduct an Adequate Investigation (Claim 1(a))

Welch first claims that he received ineffective assistance of counsel at trial because counsel failed to conduct an adequate investigation.  Specifically, he claims that counsel failed to interview crucial witnesses, failed to properly inspect the crime scene, and failed to "file motions to both suppress and exclude damaging evidence."  (Doc. # 1 at 18-27).

### a.  Failure to Interview Crucial Witnesses

Welch maintains that since "the very birth of this case" he has "asserted to Counsel that there had to be several people that had witnessed the events that transpired that day, as he was familiar with the location and knew that there was a place across the street where locals congregated." (*Id.* at 18-19).  Welch claims that prior to his trial, he heard rumors "from sources on the street" that "people did see what happened that day and knew it was not

him who committed the crimes." (*Id*. at 19). Welch claims he asked counsel to "go out interview and/or call some of the tenant's [sic] who lived at the apartment complex where these crimes are alleged to have happened" because he "knew some of these people and that they know [Welch is] not a drug dealer, and may have seen the events that transpired that day." (*Id.* at 48).

Welch has submitted the affidavits of Carolyn Boone, Willie Giddens, and Melvin Wilson. He explains that it took him several years to "track down these people and get an understanding of exactly what the substance of their testimony would be, then get them to sign Affidavits to that effect." (*Id.* at 19). The affidavits, all identical with the exception of the affiant's name, provide as follows:

> 1). I _____, along with several others, was sitting in Uncle Bob's yard on the day of April 18th, 2007, between the hours of 1:30 pm and approximately 4:00 pm socializing and having fun.
>
> 2). I observed many things go on that day that involved the police, including an argument that took place between two men, one of which who was carrying a gun.
>
> 3). I can testify to what I saw that day and would have gladly done so had Mr. Welch's Attorney or acting representative contacted me.
>
> 4). I know for a fact that Mr. Welch was not on Avenue J at the time in question because I was in a position to see the events that transpired.
>
> 5). In addition, I could see from my vantage point (across the street) that the police went into the first upstairs Apartment and shortly thereafter let everyone out of the house. The police then came out of the first Apartment ("Drug House") and climbed into the next-door Apartment. When the police came out of the second Apartment they had a Blue Pocket Book Purse and a Rifle.

6).  I could and would testify that the person that ran the drug house was constantly going in and out of then [sic] next-door Apartment with a Blue Bag that looked just like the one the police came out with.  In fact, everyone around there (including some Birmingham police) knew those two Apartments were used to sell drugs.

7).  Ultimately, I know for a fact that Larry Welch is not the man who lived there, and is not the person I saw arguing with the other man.

(Doc. # 1 at 50-55).  Welch claims that counsel's failure to interview these eyewitnesses was

constitutionally ineffective.  He contends that had this testimony been presented to the jury,

it is not likely he would have been convicted.  (*Id*. at 19).

Welch further alleges that counsel should have interviewed and called as witnesses,

some of the tenants who lived in the apartment building where the crime took place.  (*Id*. at

21).  He claims that some of "these people may have seen what happened on the day in

question" and "would have testified that he is not and never has been a drug dealer."  (*Id.*).

In response, Welch's attorney, Glennon Threatt, states:

In my meetings with him prior to trial, Welch never gave me any identifying information that I could have used to identify these witnesses to determine if they existed, where they were, if they had prior criminal histories or if in fact, they would be credible witnesses for his defense.  Welch claims in his affidavit that he had heard from "people on the outside" that there was exculpatory evidence concerning his case.  Welch did not tell me then, nor does he identify now, who these people were that he supposedly told me at the time could provide exculpatory testimony on his behalf.  I had no reason not to talk to these witnesses had I known their identity(s) at the time.  As to the affidavits attached to Welch's petition, I had never heard of Carol Boone, Willie Giddens or Melvin Wilson until my review of Welch's petition.

(Doc. # 4-1 at 7).  Mr. Threatt points out that from a strategic standpoint, there is no way to

tell if Carol Boone, Willie Giddens or Melvin Wilson would have been good witnesses

9

because it is impossible to tell if any of them had an adequate opportunity to observe the

events in question, if any of them had criminal records that might have impeached their

veracity as witnesses, or if any of them were impaired by drugs or alcohol at the time in

question.  (*Id*. at 7).  Mr. Threatt adds that in his experience, witnesses from near the scene

of alleged drug sales are often unhelpful at trial because they refuse to admit their presence

at the scene, they were under the influence of drugs or alcohol themselves, and/or they have

prior criminal convictions that would allow their testimony to be impeached.  (*Id.* at 8).  He

adds, however, that if he had known about these witnesses and had been able to locate them,

he would have allowed Welch to decide if they should be called as witnesses at the trial.

(*Id.*).

Mr. Threatt adds that:

> I did in fact go to the crime scene with my co counsel, Mary K. Laumer, on 12/1/07 and conduct a detailed investigation of the scene.  While at the scene, I spoke to three witnesses, L. Hamilton, E. Welch (the Petitioner's brother I believe) and a Mr. Stokes.  I walked through the entire area, including the location of the arrest of Welch.

> I also took more than 30 photographs of the scene, 19 of which I shared with Welch during our pretrial conferences.  I still have 19 of these digital photographs in my case file.  While at the crime scene, I distinctly remember at least one of the witnesses telling me that they remembered the day in question, and that they remembered seeing Welch in an argument with another man, and in possession of both the rifle and the backpack.  In addition, at least one of the witnesses told me that around the time of the incident, Welch frequented the apartment complex as he was a drug user and that drugs were constantly being sold there.  As a strategic decision, I did not think that either of these witnesses would be beneficial to the defense so I did not call them. I traveled to the Cullman Detention Center the same day I visited the crime scene (12/1/07) and told Welch everything that I had learned.

(*Id*. at 8-9).

Welch argues in his traverse that his "claim is premised upon [time] as being the swinging factor." (Doc. # 6 at 1). The crime occurred on April 18, 2007. The trial took place on December 3, 2007. Mr. Threatt conducted his investigation of the crime scene on December 1, 2007. Welch maintains that by December, 2007, the housing complex had been shut down and was completely vacant. (*Id*. at 2). He contends that if Mr. Threatt had investigated the crime scene in a more timely fashion, he could have interviewed the people who lived there during the time in question. (*Id*.). Welch admits that he did not provide Mr. Threatt with the names of any people who actually witnessed the crime, but claims he gave him the names of several people who "hung out" at the apartment complex and several who lived at the complex during the time.[2] Welch adds that had he known Mr. Threatt had encountered witnesses who gave "disfavorable information," he would have insisted on calling them at trial because "their testimony would likely end up being favorable" because he is innocent. (*Id.* at 34).

It is undisputed that prior to trial, Welch never provided Mr. Threatt with the name of a single witness to the crime. Welch implies that if Mr. Threatt had gone to the crime scene earlier, he would have found favorable witnesses. However, this claim is speculative

---

[2]  Welch identifies Carolyn Square, Eddie Welch, Bruce Wayne, Lillien Prince, Sharon Beverly, and Carolyn Moore as people who "hung out" and/or lived in the apartment complex at the time of the crime. (*Id.* at 34). Welch has not provided affidavits from any of these individuals.

as there is no way of knowing who, if anyone, Mr. Threatt might have encountered if he had gone to the crime scene earlier or what their testimony might have been. Further, the movant has offered nothing to suggest how Mr. Threatt might have discovered Carolyn Boone, Willie Giddens, or Melvin Wilson prior to trial. Finally, during his investigation of the crime, Mr. Threatt encountered one witness who remembered seeing Welch in an argument with another man, and in possession of both the rifle and the backpack, and another witness who indicated that around the time of the incident, Welch frequented the apartment complex as he was a drug user and drugs were constantly being sold there. Mr. Threatt made the strategic decision, not to call either of these witnesses. The movant has offered nothing but speculation to support his claim that counsel was deficient for failing to interview favorable witnesses. Thus, he has failed to establish that counsel's representation fell below an objective standard of reasonableness.

Further, even if counsel's failure to interview favorable witnesses could be considered deficient, Welch has not shown that but for the alleged deficiency, there is a reasonable probability that the result of the proceeding would have been different. Welch asserts that had Carol Boone, Willie Giddens, and Melvin Wilson testified at trial, it is "not likely" that he would have been convicted. However, "not likely" a conviction would have occurred is not the standard. Rather, Welch must show that had they testified, there is a reasonable probability that he would have been acquitted. There is no way of knowing how credible the testimony of these witnesses might have been. Further, at trial:

> Two officers testified they saw a man in a black shirt and gold pants who fit Welch's description carrying a rifle and a blue backpack.  Both testified they got a clear look at the suspect's face before he fled into an apartment building and both identified Welch at trial as the suspect.  When the officers captured Welch less than a block away from the apartment building, he was wearing a black shirt and gold pants and one of the officers testified that he recognized Welch's face.

*United States v. Welch*, 330 Fed. Appx. 859, 861 (11th Cir. 2009).  Thus, even if these witnesses had testified at trial to the facts alleged in their affidavits, their testimony would have only contradicted the testimony of the police officers.  Their purported testimony is insufficient to establish a reasonable probability that the results of the proceeding would have been different had they testified.

Welch further claims counsel was ineffective for failing to call Officers Staton and Lovett to testify.  Welch explains that these officers were the ones who arrested him "while he was knocking on a friend[']s door where he was going to conduct a break [sic] job." (Doc. # 1 at 20).  He asserts "they would have testified that upon his arrest Welch was not out of breath, scratched or bleeding, dirty, or anything else that would be consistent with being in a fight, a foot chase, and jumping out of a third story window and then over a tall fence with barbed wire on top." (*Id.*).  He claims this testimony would have provided much needed support to his misidentification defense.  (*Id.* at 21, 49; Doc. # 6 at 35).

Welch speculates that Officers Staton and Lovett would have testified that Welch's appearance at the time they apprehended him was not consistent with his having just fled from the apartment where he left the rifle and backpack.  However, there is nothing to

support his conclusion that the officers would have provided such testimony.  Further, even if the officers had testified that Welch was not out of breath, scratched, bleeding or dirty when they arrested him, there is not a reasonable probability that such testimony would have changed the outcome of the trial.  Officers Vickroy and Hays both identified Welch as the man they saw running with a rifle and the blue backpack in which the drugs were found.  (Doc. # 45 at 50-53; Doc. # 46 at 60).  Although Welch implies that to have eluded officers Vickroy and Hays, he would have had to jump out of a three story building and scale a barbed wire fence, the record does not support this position.  The photographs admitted into evidence at trial clearly establish that the apartment building from which the petitioner fled was a two-story building.  (Doc. # 1 at 56 - 57).  Officer Vickroy testified that there was an opening in the fence behind the apartment that Welch could have gone through rather than scaling the fence.  (Doc. # 46 at 49).  Thus, even if Officers Staton and Lovett had testified as Welch imagines they would have, their purported testimony is insufficient to establish a reasonable probability that the results of the proceeding would have been different.  This claim is due to be denied.

### b. Failure to Properly Inspect the Crime Scene

Welch claims counsel was ineffective for failing to properly conduct his own personal investigation of the crime scene before everyone moved out of the apartment complex and failing to take his own pictures of the scene.  (Doc. # 1 at 21).  He claims that since the entire case was "hinged upon Officer Vickroy's identification of Welch and his version of how the

events transpired," if counsel had "personally gone to the crime scene and taken some pictures of his own (before all of the tenants moved out), he would have been in a much better position to impeach Officer Vickroy." (*Id*. at 22).  Welch maintains that:

> Pictures of the apartment complex while people still lived there would have created a completely different and more realistic impression.  That is, all of the pictures that were presented by the Government were of a completely abandoned apartment complex. (See Exhibits C, D, and E).  These pictures created the impression that there was absolutely nothing going on there except the events that transpired on the day in question, which in turn unfairly bolstered Officer Vickroy's testimony.   Especially considering the Government's repeated references to the apartments and parking lot as being vacant.

(*Id*.).  Welch claims that additional pictures showing a wide view of the apartment complex would have impeached Officer Vickroy's testimony that he got a good look at Welch and that they lost view of Welch once he entered one of the apartments.  He adds that if counsel had carefully inspected and photographed the "alleged getaway route," he could have "floundered the Government's entire case" by showing that Welch could not have been the perpetrator since he would not have had time to arrive at the scene of his arrest and could not have arrived at the arrest scene unscathed if he had jumped from a three-story window and climbed a barbed wire fence.  (*Id*. at 23-24).

In response to this claim, Mr. Threatt states in his affidavit:

> Welch also claims that had I gone to the scene, I would have been better able to impeach Officer Vickroy's eyewitness identification of him for several reasons.  I went to the scene, and used this knowledge to cross-examine Officer Vickroy to the best of my ability at trial.  Next, Welch claims I was ineffective because of my failure to take pictures of the apartment complex when more people lived there, so I could have shown the jury pictures of the

apartment complex while more people lived there.  I do not understand this argument.

One of the Exhibits used by the jury in the trial, (Governments Exhibit 6), was an aerial view of the apartment complex.  It would not have mattered at all whether or not this exhibit showed a building that was occupied or not as it was an aerial view.  Welch repeatedly claims in his affidavit at page 15, that the building was three stories.  It in fact was a two-story garden apartment complex.  Further, there was an alternate escape route by which the suspect could have escaped that would not have required jumping a fence at all; he simply could have run through the back of the complex around the fire station.  This fact was discovered by me during my crime scene investigation.  When I went to the scene, I discovered a hole in the fence that could also have been used by the suspect to escape the apartment complex and run out the back of the apartments.  Officer Vickroy testified about his observation of this break in the chain link fence during his testimony on redirect examination (Transcript, Vol. 2, p. 49).

(Doc. # 4-1 at 9-10).

As stated in his affidavit, counsel conducted a detailed investigation of the crime scene on December 1, 2007.  (Doc. # 4-1 at 8-9).  He took more than thirty photographs of the crime scene and interviewed several potential witnesses.  (*Id.*).  Welch suggests that counsel's photographs might have been more helpful to him if counsel had investigated and taken photographs closer to the date of the crime, April 18, 2007.  However, Welch was not indicted until September 25, 2007, and Mr. Threatt was not appointed to represent Welch until October 10, 2007.  Further, at trial, Officer Hays testified that when the crime occurred, only the last apartment on one end was occupied and the "rest of them were vacant."  (Doc. # 46 at 68).  Thus, even if Mr. Threatt had gone to investigate the scene on the day he was

appointed, there is nothing to indicate that he would have discovered anything more helpful to Welch that he found on December 1, 2007.

Furthermore, Mr. Threatt took his own photographs of the scene and personally observed the apartment complex and its surroundings.  Mr. Threatt saw for himself that the window through which Welch probably escaped was a second floor window and that there was a gap in the fence behind the apartment through which Welch could have gone.  There is nothing to indicate that an even more thorough investigation would have turned up anything different.  Thus even if Mr. Threatt had investigated and taken photographs of the crime scene earlier, there is nothing to indicate there would be a reasonable probability that the results of the proceeding would have been different.  This claim is due to be denied.

### c. Failure to File Motions to Suppress and Exclude Damaging Evidence

Welch claims that counsel failed to file any pretrial motions with respect to "excluding and suppressing damaging evidence."   He claims "it is likely that had Counsel done so, neither Welch's pretrial statement [n]or the 911 call would have been admitted."[3]  (Doc. # 1 at 24).

Special Agent Alicia Hanne interviewed Welch at the Jefferson County Jail on May 1, 2007.  After waiving his *Miranda* rights, Welch provided the following information to Agent Hanne:

---

[3] Welch does not discuss the 911 call in this section of his motion; rather, he discusses it in the next section.

•Welch stated he was going to a friend's house to help repair his car when he was arrested.

•Welch stated he drank six beers and smoked crack on the day he was arrested.

•Welch denied having a gun or drugs in his possession and denied running from the police the day he was arrested.

•Welch stated that the gun belonged to a guy named "Black," who lived nearby.  He stated that his fingerprints might be on the gun because he had considered purchasing the gun from "Black" and had touched the gun.  Welch described the gun as a black 9 millimeter rifle.

•Welch stated that the drugs probably belonged to a girl he knew, who lived by the abandoned apartments.

•Welch stated that he had a drug and alcohol problem and that he had been arrested previously on robbery charges.  He stated that he was willing to cooperate in any way.

(Doc. # 1 at 59; Doc. # 46 at 134-138).

Welch argues that counsel should have moved to suppress/exclude this statement, or portions of it, for two reasons.  (Doc. # 1 at 25).  First, he claims the statement was not entirely accurate.  He states that he did not tell Agent Hanne that his fingerprints would definitely be on the gun, but told her IF they were on the gun, it was because he had touched the gun when a man called "Black" had tried to sell the gun to him.  (*Id*. at 49).  Welch states that he also told Agent Hanne "that when he was booked at Jefferson County Jail he was told that he was being detained in connection with a blue backpack containing cocaine and other

drugs as well as a black 9 millimeter rifle."[4]  (*Id.* at 26).  Welch further states that he did not

"just say that he had an alcohol and drug problem with a prior criminal history of robbery,

but rather that it was not his Modus operandi, he was not a drug dealer." (*Id*.).  Welch alleges

that the "Government used this inaccurate version of Welch's verbal statements as being a

confession/direct evidence of guilt" and that counsel "in his experience should have clearly

seen that coming, and moved to suppress/exclude at least the disfavorable portions of the

projected testimony/statement."  (*Id*.).

Second, Welch claims that counsel "should have moved to exclude certain portions

of the verbal statement on the basis that: (1) it was not relevant to determining guilt or

innocence; and/or (2) the unfair prejudice far outweighs any probative value."  (*Id*.).

Specifically, he claims counsel should have moved to exclude all mention of Welch's drug

use and all mention of his criminal history because both of these factors were "very

prejudicial towards Welch because they create a bad mans inference," since a "person who

has a criminal history or uses drugs is far more likely, in the jury's eyes, to have committed

the crimes that are in question."  (*Id*. at 26-27).

In response to this claim, Mr. Threatt offers the following:

Officer Alicia Hanne interviewed Welch at the Jefferson County Jail on May
1, 2007.  Prior to this interview, Welch was read his Miranda rights and signed
a waiver of those rights.  He never disputed this in our conversations.  And, the
version of the statement given by Welch to Officer Hanne in the jail that she

---

[4] Welch explains that this is important because without this information, it looked like
he was guilty because he knew specifics about the evidence.  (*Id*. at 26).

testified to at trial was essentially identical to the version of facts that Welch had given me in our interviews when we discussed the events of that day. In my meetings with Welch, he denied possessing the gun or the drugs. Hanne said this same thing to the jury when she testified at trial about his statement to her.

Since Welch never denied to me this custodial, post Miranda interview, was knowing, intelligent and voluntary, I never felt that this statement could be legitimately suppressed since his constitutional rights had not been violated. Welch did in fact dispute some of the factual details of the statement as testified to by Hanne, but the statement itself could not be suppressed because it was a knowing, voluntary post Miranda statement. As a consequence, I fail to understand the logic of Welch's claim that I should have moved to suppress the disfavorable portions of the statement. If the statement was post Miranda (which Welch does not deny); and if it was knowingly, intelligently and voluntarily given (again which Welch does not deny) then as an admission by the Defendant it is admissible in the totality.

This statement is also clearly relevant, because it is probative of a material fact at issue - whether or not Welch knowingly and voluntarily possessed the drugs and/or the gun. He denies it in his statement to Hanne, and therefore if the jury had believed it, he could have been found not guilty on that basis alone. Apparently, they did not. The fact that the jury found him guilty does not make the statement irrelevant. Clearly, it is prejudicial, as is any confession. The fact that Welch disputes some details of Hanne's version of his statement does not make it unconstitutional and inadmissible. It simply means that they disagree about the contents of the statement. Welch was free to testify and tell the jury that Hanne was wrong. He exercised his constitutional right to remain silent and chose not to do so.

(Doc. # 4-1 at 10-11).

Welch maintains that counsel should have moved to suppress or exclude all of his statement, or at least portions of his statement because Agent Hanne's version of his statement was not entirely true and because it was irrelevant or prejudicial. However, as Mr. Threatt indicated, there was no basis upon which to seek to have the statement suppressed

or excluded since Welch voluntarily made the statement after being read his *Miranda* rights and agreeing to speak with Agent Hanne, and the statement clearly was not irrelevant.  The only way Welch could have challenged Agent Hanne's testimony would have been to testify in his own defense.

Welch claims that had counsel "not given [him] the erroneous advice not to testify on his own behalf, th[e]n he would have been able to get on the stand and rebutt [sic] Agent [H]anne's testimony, as well as give exculpatory evidence on his own behalf."  (Doc. 6 at 10).  Welch states that the "evidence in dispute informed the jury that [he] had a criminal record and a history of drug abuse," so there was "no strategic purpose or reason" for him not to testify.  (*Id*. at 11).  He adds that his testimony "could have put a great deal of light on several questionable aspects of this case, and is quite likely to have resulted in either a hung jury or an outright acquittal."  (*Id*.).

Clearly, counsel's failure to move to have Welch's statement suppressed or excluded was not deficient.  Likewise, counsel was not deficient for advising Welch not to testify in light of his prior robbery convictions and history of drug abuse.  Further, Welch cannot show that he was prejudiced by counsel's failure to move to suppress or exclude his statement.  Because there was no basis upon which to move to suppress or exclude the statement, it is not reasonable to conclude that the statement would have been excluded even if counsel had sought to suppress it.  Moreover, even if the statement had been suppressed, there is nothing to suggest there is a reasonable probability that the outcome of the trial would have been

different, given the police officers' testimony that they got a clear look at Welch's face when he was running with the gun and backpack and the fact that they both identified him at trial as the suspect.  Finally, Welch cannot show that he was prejudiced by counsel's advice that he not testify at trial.  Although Welch believes he could have changed the jurors' minds if he had testified, it is only speculation and highly improbable that his testimony would have helped him in any way.  This claim is due to be denied.

### 2.  Failure to Oppose the Repeated Playing of the 911 Recording (Claim 1(b))

Welch claims that at trial, the government repeatedly played the 911 recording to unfairly prejudice him.  (Doc.# 1 at 27).  Welch explains that the "substance of the anonymous 911 call was that on 21st Street and Avenue J there was a black man wearing gold pants and a black shirt, beating another man with a rifle." (*Id*.).  He adds that the 911 caller "did not identify Welch as being the person in question, but did provide a clothing description and reported another crime other than the one charged. (i.e., an assault involving the use of a rifle)." (*Id*.).  Welch claims that it was not necessary to "keep playing this recording" and it was extremely prejudicial to him because it "created an impression on the jury that the suspect was an extremely violent man, beating someone down on the street with a rifle." (*Id*. at 27-28).  Welch asserts that counsel should have objected to the introduction of the 911 recording on the grounds that it violated Rule 404(b) of the *Federal Rules of Evidence* because it presented evidence of an uncharged crime and it violated Rule 403 of

the *Federal Rules of Evidence* because the prejudice resulting from the "repeated playing" of the recording far outweighed any probative value the recording might have had.  (Doc. 1 at 28; doc. 6 at 13).  Welch contends that counsel "could have easily kept this damaging evidence from being admitted at trial by just stipulating to background/foundation in this regard." (*Id*. at 27).

In response to this claim, Mr. Threatt points out that he repeatedly objected to the admission of the 911 tape.  (Doc. # 4-1 at 12).  He adds that the government was not willing to stipulate to the content of the 911 tape, but wanted to play the tape for the jury.  (*Id.*).

Counsel was not deficient for failing oppose the playing of the 911 recording.  As reflected in the transcript of the trial, the 911 recording was played only one time.  (Doc. # 45 at 39).  Furthermore, the tape was played for the purpose of explaining the actions of the police officers on the date Welch was arrested, not for the purpose of proving Welch was guilty of the crimes for which he was charged because he had been involved in another, different crime earlier in the day.  Counsel could not have stipulated to the contents of the 911 tape since the government did not choose to make such a stipulation.  This claim is due to be denied.

### 3.  Failure to Oppose the Introduction of the 911 Recording (Claim 1(c))

Welch next claims that counsel was ineffective for failing to oppose the introduction of the 911 recording on constitutional grounds, because it deprived him of his right to confront the witnesses against him, specifically, the 911 operator and the 911 caller.  (Doc.

23

# 1 at 30).  The record reflects that counsel did in fact object to the introduction of the 911 recording.  Counsel argued that there was "no foundation that the content of what's on the tape is the same as what was on the call that was made to the police department," (doc. # 45 at 28) and that "somebody has got to come in here and say that what's on that tape is what someone called in and said" (doc. # 45 at 30).  Because counsel clearly opposed the introduction of the 911 recording, this claim is without merit and is due to be denied.[5]

### 4.  Failure to Oppose the Introduction of the Gun and Drugs into Evidence (Claim 1(d))

Welch claims that counsel was ineffective for failing to object to the introduction of the drugs and gun into evidence on the basis that the government failed to establish a chain of custody.  (Doc. # 1 at 31).  He claims that the "evidence went through several different peoples hands before it was tested and then presented at trial," there were "many gaps in the chain of custody," and the evidence at trial was insufficient to "establish that the evidence tested and presented was actually that which was seized on the day in question."  (*Id*.). Welch maintains that if counsel had objected, "the Court would have been forced to 'determine whether the Government has made a prima facie showing of authenticity.'"  (*Id*.). He adds that by "failing to make this objection, Counsel failed to put the Government's case

---

[5]  Welch adds in a footnote that counsel was also ineffective for failing to "try and find the 911 caller ("eye witness") and present their testimony, and/or for failing to raise a confrontation objection involving the 911 caller."  (Doc. # 1 at 21, n.3).  Even assuming counsel was deficient for either of these reasons, Welch has offered nothing to indicate that the result of his trial might have been different if counsel had tried to find the 911 caller or if counsel had raised a confrontation objection specific to the 911 caller.

to a meaningful test, and denied Welch of a potential defense. (i.e., That the drugs and gun that he is alleged to have possessed were/are phony, different, or had been tampered with.)." (*Id.*).

Mr. Threatt explains that he did not object to the admissibility of the evidence because in the Eleventh Circuit, challenges to the chain of custody of evidence go to the weight of the evidence, not the admissibility of the evidence.  (Doc.#  4-1 at 13).

This claim is wholly speculative.  The government established a proper chain of custody for all of the evidence admitted at trial.  In any event, a "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence."  *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985).  Thus, "the adequacy of proof relating to the chain of custody is not a proper ground to challenge the admissibility of evidence."  *Id*. There is nothing to indicate that the drugs and rifle admitted at trial were anything other than what they were represented to be.  Counsel's failure to object to the admission of the drugs and gun into evidence was not unreasonable, and Welch has failed to establish prejudice. This claim is due to be denied.

### 5.  Failure to Adequately Cross-Examine Two Police Officers (Claim 1(e))

Welch contends counsel was ineffective for failing to adequately cross-examine Officers Vickroy and Hays.  (Doc. # 1 at 32).  He claims that if counsel had adequately inspected the crime scene and interviewed "certain witnesses," "with emphasis on the point where the Officer's [sic] allegedly identified the suspect and then lost sight of him, and the

alleged getaway rout[e] in comparison to the time and place where Welch was found and arrested, he would have been much better armed in the cross examination of" the officers. (*Id*.).  Welch asserts that if counsel had the right information, he could have "completely impeached these two Officer's [sic] testimony which included there [sic] shady eye witness identification."  (*Id*.).

> Mr. Threatt states that in cross-examining the officers:
>
> did the best I could to challenge their ability to observe, their ability to recall and the accuracy of their identification of Welch.  I also inquired about another potential suspect that had been seen at or near the crime scene seconds after the original observation of the suspect with the gun and the backpack.
>
> I feel that I effectively showed during the cross examination of Officer Vickroy that he made mistakes in the description of Welch's hair color, the model of the gun, and whether or not the suspect had facial hair (Transcript Vol. 2, at p. 29, 30 and 31).  Further, I specifically asked Officer Vickroy if he noticed whether or not Welch had any grass stains on his clothing, broken bones, or if he was bleeding at the time of his arrest (Transcript Vol., 2, p. 41 and 42).  The fact that Welch was convicted may not be due to my failure to effectively cross-examine the officers, but rather the jury's belief in their credibility as witnesses.

(Doc. # 4-1 at 14).

Counsel's cross-examination of Officers Vickroy and Hays was in no way deficient. Counsel rigorously cross-examined both officers, calling into question their entire testimonies, including their identifications of Welch as the suspect; whether or not they were ever in a position to get a clear view of the suspect; their misdescription of Welch as having black hair when it was in fact gray or salt and pepper; their inability to recall other details about the day of the crime that were not included on the police report; whether they were in

a position to see Welch if he had jumped from a second story window in the back of the apartment complex; and whether Welch had grass stains on his clothing or anything to indicate he had jumped from a second story window and escaped over a barbed wire fence. (Doc. # 45 at 5-43; 53-55; 73-81).   Further, Welch has not shown prejudice since there is nothing to indicate that further cross-examination of the officers on these or other issues would have resulted in a different outcome.   This claim is due to be denied.

### 6.  Failure to Oppose a Jury Instruction (Claim 1(f))

During their deliberations, the jury sent a note to the court stating:

> We cannot come to a unanimous decision on Count 1 and seem to have exhausted all argument.  We are at an impasse.  We are unanimous on Count 3.  Please advise.

(Doc. # 47 at 4).   In response, the court sent a note back to the jury, informing them:

> During the trial, you heard and viewed a lot of evidence which must be fully considered and discussed by all of you.  It is my judgment you have not had a sufficient opportunity to do that.  Therefore, I'm going to request that you continue your deliberations.

(*Id*. at 4-5).  The judge explained that he chose this language because he thought it was "too early to give a dynamite charge."  (*Id*. at 5).

Welch claims counsel was ineffective for failing to oppose this instruction because it was "improper and severely prejudicial, as it essentially told the jury not to come back until it unanimously found Welch guilty of count one," since the instruction "created the inference that the only verdict that would be accepted by the Court was one finding Welch guilty of all counts."   (Doc. # 1-1).   Welch maintains that if counsel had opposed "this improper

27

instruction," he "would not likely be serving" the "20-year mandatory minimum sentence" imposed for his conviction on Count 1.  (Doc. # 1 at 34).

In response to this claim, Mr. Threatt offers the following:

> I respectfully disagree with this allegation.  First, the record will reflect that the jury had not been deliberating an undue amount of time at the time this note was sent back to the Court.  Secondly, what the jury note actually said was not that they were at a total impasse, but only as to Count 1.  They stated that they had in fact reached a unanimous verdict as to Count 3.  (Transcript Vol. 3, p.4).  This verdict was apparently guilty, unless they changed it before they came out with all three verdicts later.  What the Court said at the time was that the Court felt that it was too early in their deliberations to give what is commonly knows and the "dynamite charge."  I did in fact not object to this decision.  This decision not to object and not to request a mistrial at that point was a strategic one, because in my experience when the Court gives a "dynamite charge" to a jury, more often than not, the jury comes back with a guilty verdict.  If in fact there was a holdout or holdouts for the defendant, I felt it strategically more beneficial for Welch to wait and see if there was another note that they were still unable to reach a unanimous verdict.  Then at that point, I would have moved for a mistrial.  I explained this to Welch at the time and told him that the Court had the authority to take a partial verdict on the Count to which the jury indicated they had in fact reached a unanimous verdict at any rate.  He indicated at the time that he understood and did not tell me to object.

(Doc. # 4-1 at 15).

It was not unreasonable for counsel not to object to the court instructing the jury to continue its deliberations.  As Mr. Threatt explained, he believed it was beneficial to Welch to allow the jury to deliberate longer since there was at least one juror who was holding out in Welch's favor.  Further, Welch cannot show that he was prejudiced by counsel's failure to object, as there is nothing to indicate that had he made such an objection, the court would have changed its message to the jury.  This claim is due to be denied.

28

**7.  Prejudicial Statement in the Sentencing Memorandum (Claim 2(a))**

Welch claims he received ineffective assistance of counsel during the sentencing phase of his trial when counsel made a "prejudicial statement within the sentencing memorandum to the effect that the petitioner is guilty of the charged crimes."  Welch objects to counsel stating in the sentencing memorandum that "[t]he Defendant has engaged in substantial self-reflection and recognizes that his decision to become involved in the instant offense was the worst decision he has ever made in his life and he is dedicated to never again becoming involved in illegal conduct."  (Doc. # 1 at 34-35).  Welch further objects to counsel's statement that, "[a]s the Defendant's criminal behavior was at least partially due to his involvement with drugs, the Defendant submits that his sentence should not be based upon an act that occurred when the Defendant was not in control of his faculties." (*Id*. at 35). Welch asserts that these statements show "that Counsel clearly believed that Welch was guilty, and therefore could not properly represent him as being an innocent," because he had a conflict of interest.  (*Id*.).

In response to this claim, Mr. Threatt points out that the first sentence of the sentencing memorandum stated, "[a]s an initial matter, although the Defendant has been found guilty after trial by jury, he respectfully maintains his innocence of the instant offense."  (Doc. # 4-1 at 16).  However, because Welch was facing a mandatory statutory minimum sentence of 25 years in prison, counsel used the sentencing memorandum to argue for a lower sentence, by attempting to show that Welch was remorseful and had a drug

problem that influenced his actions.  Counsel's attempt to persuade the court to give Welch a lower sentence than recommended by the sentencing guidelines was not unreasonable, and Welch has failed to establish prejudice.  This claim is due to be denied.

### 8. Failure to Oppose the Improper Stacking/Grouping of Sentences (Claim 2(b))

According to Welch, the court "incorrectly crafted its own sentence using only the mandatory minimums in each count and [not] the guideline calculation provided in the PSR," and "clearly misunderstood its range of authority and the applicable guideline range which was 360-life." (*Id.* at 35-36).  Welch claims that counsel was ineffective for failing to oppose the court's miscalculation of the guideline range as being 420 months, rather than 360 months to life.  (*Id.* at 37).

There was no basis for counsel to object to the court's calculation of Welch's sentence.  In reviewing the reasonableness of Welch's sentence on appeal, the Eleventh Circuit Court of Appeals found that "the district court followed the proper procedures in sentencing Welch" and that it "correctly calculated Welch's Guidelines range." *United States v. Welch*, 330 Fed. Appx. 859, 863 (11th Cir. 2009).  Thus, counsel was not deficient for failing to make such an objection and Welch was not prejudiced by counsel's failure to make an unnecessary objection.  This claim is due to be denied.

Welch further argues that counsel should have "opposed the imposition of the 60-month consecutive §924(c) sentence on the basis that the 'Except clause' of § 924(c)

disallows such a sentence where the Defendant also faces a larger mandatory minimum under some other provision of law. . . [s]uch as Welch's 20-year mandatory minimum for the drugs, as well as his 15-year mandatory minimum for the ACCA offense." (Doc. # 1 at 38). As discussed below in Claim 7, Welch was properly sentenced to a consecutive sentence for the § 924(c) conviction because "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Abbott v. United States*, 131 S.Ct. 18, 23 (2010). Thus, counsel was not deficient for failing to challenge the 60-month consecutive sentence on the basis of the "except clause," and Welch was not prejudiced by counsel's failure to make an unnecessary objection. This claim is due to be denied.

### 9.  Failure of Appellate Counsel to Raise Allocution Issue (Claim 3)

Welch claims that appellate counsel was ineffective for failing to argue on appeal that the trial court "committed plain reversible error by failing to assure that the petitioner was afforded his right of allocution." (Doc.# 1 at 30). In response to this claim, Mr. Threatt points out that that the trial court did in fact address Welch on the issue of allocution. (Doc. # 4-1 at 17). At the sentencing hearing, the court clearly directed questions to both Welch and Mr. Threatt.

> THE COURT:   Mr. Threatt, have you and Mr. Welch had sufficient opportunity fully to review the presentence report?
>
> MR. THREATT:  Yes, we have, Your Honor.

THE COURT:  Are there any matters of a factual nature in the presentence report that either you or Mr. Welch find to be inaccurate or incomplete or that you would like to discuss with the court?

MR. THREATT:  No, Your Honor.

THE COURT:  Mr. Welch, let me focus your attention on Paragraph 39.  If you would, Mr. Threatt, open the report and show him Paragraph 39.  There the report reflects a prior felony conviction and sentence in the Circuit Court of Jefferson County, Alabama, on or about September 7 of 1990 for possession of a controlled substance, in Case No. CC-90-3178. Were you the only defendant in that case?

THE DEFENDANT:  No, sir.

THE COURT:  There were other defendants?

THE DEFENDANT:  Yes.

THE COURT:  Did you pursue any sort of an appeal of the conviction or sentence?

THE DEFENDANT:  No, sir. The reason that I got that conviction is because I was on a parole, it was a 7-year sentence, and I was advised by the attorney that it wouldn't have no kind of effect on my time. He said I would just go and finish up the prison sentence that I was just -- It was just like -- He advised that I plead out.

THE COURT:  But you did not appeal the conviction itself?

THE DEFENDANT:  No, sir.

THE COURT:  I want to advise you that any challenge by you as to the validity of that conviction, which is not made before I impose sentence today, may not thereafter be attacked, the conviction itself. Do you understand that?

THE DEFENDANT:  All right. Thank you, Judge.

THE COURT:  Sir?

32

THE DEFENDANT:  Yes, sir, I understand.

THE COURT:  All right.  The court expressly finds that pursuant to 21 U.S.C. Section 851, the conviction identified in the information filed November 21 of 2007 has been sufficiently established for purposes of sentencing under Count One.  The court also expressly finds that based upon any three of the four qualifying convictions described in Paragraphs 33, 34, 35, 36 of the presentence investigation report, the defendant is an armed career criminal for purposes of Count Three.  The court also expressly finds that the defendant is a career offender under the guideline section 4B1.1. These findings were made.  Any comments or observations, Mr. Threatt, by you with regard to the mechanical calculation of the guidelines in the presentence report?

MR. THREATT:  No, Your Honor.

The court went on to inquire of both Welch and Mr. Threatt if they had anything to present by way of "mitigation or punishment or otherwise":

THE COURT:  Anything then that you would like to present to the court by way of mitigation or punishment or otherwise or that Mr. Welch would like to present by way of mitigation or punishment or otherwise before the court proceeds with a sentence?

MR. THREATT:  We would, Your Honor, if we may.  Thank you.

THE COURT:  Please do.

(Doc. # 49 at 3-6).  Mr. Threatt then argued that Welch should be sentenced below the guidelines, to no more than 25 years in prison, to give him "some hope of not dying in prison."  (*Id*. at 6-7).  Although Welch did not answer the question himself, Mr. Threatt explains that he did not raise the issue on appeal because he knew that:

[Welch's] failure to speak in allocution was not due to anything done by the Court, but simply that when asked he had nothing to say.  I did not see his voluntary failure to speak in response to the Court's direct offer to speak as error and therefore did not include it as an issue on his direct appeal.

33

(*Id*.).

Clearly, the court personally addressed Welch, giving him the opportunity to speak or present any information to mitigate his sentence.  Thus, there was no reason for counsel to argue on appeal that Welch had not been afforded the opportunity to do so.  This claim is due to be denied.

### 10.  Cumulative Effect of Counsel's Errors (Claim 4)

Welch argues that:

> In the instant case, the petitioner provides at least nine (9) instances of ineffectiveness ranging from the pretrial phase all the way to appeal. Cumulatively, these errors amount to the constructive denial of Counsel altogether, and are sufficient to satisfy the prejudice prong of the *Strickland* analysis.

(Doc. # 1 at 40).

As discussed above, none of Welch's ineffective assistance of counsel claims has merit.  Thus, there are no errors to accumulate.  *See Borden v. Allen*, 646 F.3d 785, 823 (11th Cir. 2011)("Because Borden has not sufficiently pled facts that would establish prejudice—cumulative or otherwise—we decline to elaborate further on [a cumulative-effect ineffective assistance of counsel claim] for fear of issuing an advisory opinion on a hypothetical issue.").  This claim is due to be denied.

### B.  Actual Innocence (Claim 5)

Welch claims he has newly discovered evidence that establishes that he is actually innocent of the crimes for which he was convicted.  (Doc. # 1 at 41-45).  Specifically, he points to the affidavits of Carolyn Boone, Willie Giddens and Melvin Wilson, discussed above.  (*Id.* at 42).  Welch claims that "had these three eye witnesses been discovered, and their testimony had been admitted, no juror, acting reasonably, would have voted to find Welch guilty beyond a reasonable doubt."  (*Id*. at 44).  He adds that "indeed, three eye witness accounts that clearly establish that it was [not] Welch who was being chased by the Police that day, would have most like[ly] resulted in a unanimous acquittal."  (*Id*.).

However, in a non-capital case, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  *See also, Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1010-1011 (11th Cir. 2012).  Thus, Welch's free-standing actual innocence claim is due to be denied.

## C. Armed Career Criminal Enhancement (Claim 6)

Welch claims that he is currently attacking in state court, two of the four prior convictions that were used to support his Armed Career Criminal enhancement.  He claims that if he is successful in overturning these convictions, he will no longer be an Armed Career Criminal, and will be due to have his sentence reduced.  (Doc. # 1 at 45-46).  Welch

recognizes that this claim is not ripe for review, but asks that "he be allowed to preserve this claim for future amendment 'in relation back.'"  (*Id.*).

In *Stewart v. United States*, 646 F.3d 856, 865 (11th Cir. 2011), the Eleventh Circuit Court of Appeals held that a § 2255 motion arising from the vacatur or expungement of state convictions will not be considered as second or successive under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The precedent of *Stewart* establishes that if Welch, acting diligently, succeeds in having his state convictions overturned, then he may bring another § 2255 motion challenging his sentence enhancement based on his career-offender status, without having it be deemed second or successive within the meaning of the AEDPA.  Thus, there is no need to "preserve this claim" for later since Welch may file another § 2255 motion if he succeeds in overturing his prior convictions.  This claim is due to be denied.

## D.  § 924(c) Consecutive Sentence (Claim 7)

As set out above, Welch was convicted of one count of possession with intent to distribute fifty grams or more of a mixture and substance of cocaine base and an amount of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(D)(Count 1); one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(Count 2); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1)(Count 3).  He was sentenced to a term of 240-months' imprisonment under Count 1.   Under Count 3, he was sentenced to 180 months'

imprisonment, with 60 months to run concurrently with Count 1 and the remaining 120 months to run consecutively with Count 1.  Under Count 2, the § 924(c) conviction, he was sentenced to 60 months' imprisonment, to run consecutively to the sentence imposed in Count 3.

Title 18 U.S.C. § 924(c) provides:

*Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime — (i) be sentenced to a term of imprisonment for not less than 5 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added).  Courts refer to the emphasized portion of the statute as the "except" clause.  *See, e.g., Abbott v. United States*, 131 S.Ct. 18, 22 (2010). Section 924(c) further states that "[n]otwithstanding any other provision of law—no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which a firearm was used, carried, or possessed."  18 U.S.C. § 924(c)(1)(D)(ii).

Welch maintains that since the mandatory minimum sentences he received for his other two convictions are greater than the sentence he received for the § 924(c) violation, the consecutive sentence he received for the § 924(c) conviction was unauthorized, pursuant to

the "except" clause.  (Doc. 1 at 38-39).  However, the Supreme Court has rejected this argument.  In *Abbott v. United States*, 131 S.Ct. 18 (2010), the court held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."  *Id*. at 23.  Welch was properly sentenced to a consecutive sentence for the § 924(c) conviction.  This claim is due to be denied.

**E.  The Amendment (Claim 8)**

Welch filed an amendment to his motion to vacate on April 10, 2012.  (Doc. # 7).  In the amendment, Welch claims that counsel was ineffective during the pre-trial phase because he  failed "to even attempt to negotiate a plea agreement on Welch's behalf" and failed to "properly advise him in regards to his chances of success at trial, and the sentence he likely faced if he lost, as opposed to that he would receive if he entered into a plea agreement with the government or entered a naked plea with the court, in light of the Supreme Court's recent holdings in *Lafler* and *Frye*."  (*Id*. at 1).

There is a one-year statute of limitations on § 2255 motions.  28 U.S.C. § 2255(f).  The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. Welch's conviction became final December 7, 2009, when the Supreme Court denied his petition for certiorari. *See Washington v. United States*, 243 F.3d 1341, 1344 (11th Cir. 2001). The limitations period expired one year later on December 7, 2010. Welch's original motion to vacate, filed on November 23, 2010, was timely. However, his amendment was not filed until April 10, 2012.

Welch's new claim is untimely unless it relates back under Rule 15(c) of the Federal Rules of Civil Procedure, to one of the claims in his original motion. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Id*. A pleading relates back to the original pleading when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Rule 15(c)(1)(b).

> For a claim to relate back in a § 2255 proceeding, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id*. (quotation marks and citations omitted). "So long as the original and amended petitions state

claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664, 125 S.Ct. 2562, 2574, 162 L.Ed.2d 582 (2005).  An amendment that serves to expand facts or cure deficiencies in an original claim relates back to the original claim. *Dean v. United States*, 278 F.3d 1218, 1223 (11th Cir. 2002) (per curiam).

*Mabry v. United States*, 336 Fed. Appx. 961, 963 (11th Cir. 2009).

Welch's new claim is that counsel was ineffective during the pre-trial phase by failing "to even attempt to negotiate a plea agreement on Welch's behalf," and by failing to "properly advise him in regards to his chances of success at trial, and the sentence he likely faced if he lost, as opposed to that he would receive if he entered into a plea agreement with the government or entered a naked plea with the court."  He argues that this claim relates back to his original motion because he "raised several claims in his initial § 2255 Motion in regards to Counsel's ineffectiveness during the pre-trial phase of the proceedings," and the "newly asserted claim involves both ineffective assistance and takes place during the same pre-trial phase of the proceedings." (Doc. 7 at 3).  He reasons, therefore, that the "new claim takes place during the same time, and is of the same type already pleaded." (*Id.*).  He adds that the "new claim is merely an expansion of [his] initial pre-trial ineffective claims, and directly relates to the initial claim that the Cumulative effect of Counsel's errors amounts to constitutionally ineffective assistance of counsel." (*Id.*).

In the original motion, Welch raised only one claim pertaining to ineffective assistance of counsel prior to trial.  In that claim, he alleged counsel was ineffective for failing to conduct an adequate investigation, failing to interview crucial witnesses or properly

inspect the crime scene, and failing to file motions to suppress and exclude damaging evidence.  (Doc. 1 at 18-27).  Welch's new claim, involving potential plea negotiations and advice regarding the benefits of a plea agreement versus going to trial involves very different aspects of counsel's performance and has no core facts that coincide with the original claim. As a result, the new claim does not relate back to the original motion.

Welch further argues that he should be allowed to amend his original motion because because the cases upon which his new claim is based, *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), did not exist at the time he filed his original pleading.  (Doc. 7 at 3).  Since Welch filed the amendment within one year of the decisions in *Frye* and *Lafler*, the amendment is timely if the right established in *Frye* and *Lafler* has been "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).

That being said, the Eleventh Circuit Court of Appeals held that neither *Frye* nor *Lafler* announced a newly recognized right that applies retroactively to cases on collateral review.  *In re Perez*, 682 F.3d 930 (11th Cir. 2012).  Rather, in *Frye* and *Lafler*, "the Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel . . . extends to the negotiation and consideration of plea offers that lapse or are rejected." *Id*. at 932. Since *Frye* and *Lafler* did not recognize a new constitutional right made retroactive to cases on collateral review, the decisions in those cases did not re-start the limitations period under § 2255(f)(3).  *See Flores v. United States*, Criminal Action No. 1:07–CR–0279–14–CAP,

Civil Action No. 1:13–CV–1347–CAP, 2013 WL 2636987 at *2 (N.D. Ga. June 10, 2013)(finding that *Lafler* and *Frye* did not announce newly recognized retroactive rights for purpose of the calculation of the one year period of limitation under § 2255(f)(3)).  Thus, the amendment is time-barred and the amended claim is due to be denied.

## IV.  CONCLUSION

Based on the above, the Motion (Doc. #1) to Vacate, Set Aside, or Correct Sentence is due to be denied for all the reasons stated.  A separate order will be entered dismissing this case with prejudice.

**DONE** this ___9th_____day of April, 2014.

_____
SENIOR UNITED STATES DISTRICT JUDGE